UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

------------------------------------------------------

DERJUAN THARRINGTON

        Plaintiffs,

    v.

THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE; and WILLIAM F. TATE IV in his official capacity as President of Louisiana State University and Agricultural and Mechanical College.

        Defendants.

------------------------------------------------------

**CASE NO.:**

**Judge:**

**Magistrate:**

## COMPLAINT

Plaintiff DERJUAN THARRINGTON (hereinafter referred to as "MR. THARRINGTON"), by and through undersigned counsel, hereby files this Complaint and sues THE BOARD OF SUPERVISORS FOR LOUISIANA STATE UNIVERSITY AND AGRICULTRUAL AND MECHANICAL COLLEGE and WILLIAM F. TATE IV, in his official capacity as President of Louisiana State University and Agricultural and Mechanical College (hereinafter, "DEFENDANTS"). Plaintiff seeks injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("Americans with Disabilities Act" or "ADA") and injunctive and declaratory relief, damages, and attorneys' fees and costs pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. ("Rehabilitation Act").

## JURISDICTION AND PARTIES

1. This is an action for injunctive and declaratory relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*., and damages and injunctive and declaratory relief pursuant Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.[1]

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property which is the subject of this action is in East Baton Rouge Parish, Louisiana.

3. MR. THARRINGTON is a person of the age of majority and a citizen of the State of Louisiana.

4. MR. THARRINGTON resides in East Baton Rouge Parish, Baton Rouge, Louisiana.

5. MR. THARRINGTON is a qualified individual with a disability under the ADA and RA.

6. MR. THARRINGTON is a veteran with Post Traumatic Stress Disorder and Dyslexia.

7. Due to his disability, MR. THARRINGTON is substantially impaired in several major life activities and requires accommodations within educational environments. Specifically, MR. THARRINGTON has difficulty absorbing and processing information, reading, writing, and spelling, especially in a classroom or test-taking setting.

8. Upon information and belief, Defendant THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE (hereinafter referred to as "BOARD") is the political entity responsible for owning, administering, operating, and/or maintaining the Louisiana State University.

9. Upon information and belief, Defendant WILLIAM F. TATE IV (hereinafter referred to as

---

[1] Mr. Tharrington seeks both compensatory and nominal damages pursuant to the Rehabilitation Act of 1973. It is Mr. Tharrington's position that an award of nominal damages would confer significant civil rights to the public, as a judgment in their favor against the BOARD, regardless of the amount, would deter the BOARD from discriminating against individuals with disabilities in the future.

"MR. TATE") is the President of Louisiana State University and is responsible for ensuring that the colleges managed and operated by the BOARD comply with the law. MR. TATE is sued in his official capacity only, pursuant to the doctrine of *Ex Parte Young*.

10. Upon information and belief, Louisiana State University is a public facility which is open to members of the public, including MR. THARRINGTON.

11. DEFENDANTS are responsible for complying with the obligations of the ADA and RA.

12. All events giving rise to this lawsuit occurred in the Middle District of Louisiana, East Baton Rouge Parish, Louisiana.

## STATEMENT OF FACTS

13. MR. THARRINGTON is a veteran with Post Traumatic Stress Disorder and Dyslexia.

14. Due to his disability, MR. THARRINGTON is substantially impaired in several major life activities and requires accommodations within educational environments. MR. THARRINGTON has difficulty absorbing and processing information, reading, writing, and spelling, especially in a classroom or test-taking setting.

15. Specifically, in a classroom setting MR. THARRINGTON requires class notes and class recordings in order to process, retain, and refer back to classroom lecture material, dictation software, and a screen reader for reading textbooks and other class reading materials.

16. MR. THARRINGTON was accepted as a transfer student to Paul M. Hebert Law Center (hereinafter referred to as "LSU Law") for the Fall 2023 semester on July 18, 2023, and began communicating with the Disability Services office about his accommodations on August 1, 2023.

17. On August 1, 2023, MR. THARRINGTON emailed Ms. Dawn Sousa-Hearn, Associate Director of Disability Services about the accommodations he would need as a law student,

attaching to that email the application for accommodations and supporting documentation.

18. MR. THARRINGTON started classes at LSU Law on August 14, 2023.

19. The accommodations letter issued on August 18, 2023, granted MR. THARRINGTON the following accommodations:

> A. Consideration for Spelling, Dictation Software (exams will be dictated in Word document and transferred into Exam 4 Software)
>
> B. Double Time on All In-Class Assignments and Examinations
>
> C. Tape Recorded Lectures

20. Though not listed in the official letter, Ms. Sousa-Hearn noted in her email about the approved accommodations that MR. THARRINGTON would also have a "note taking accommodation."

21. Disability Services also issued a separate letter granting MR. THARRINGTON the use of Dragon Naturally Speaking, Legal edition (hereinafter "Dragon") for use during his final exams.

22. In the Spring 2024 semester MR. THARRINGTON was granted the same accommodations as the Fall 2023 semester.

### I.  Failure to Provide Class Recordings

23. In the Fall 2023 semester MR. THARRINGTON received emailed class recordings from his professors or their assistants directly. This fulfilled his approved accommodation for tape recorded lectures. He was not informed that there was a change to how he would receive his accommodation for the Spring 2024 semester.

24. Classes for the Spring 2024 semester began on January 8, 2024.

25. On January 12, 2024, MR. THARRINGTON emailed Angela Neel, Assistant Director of

Disability Services, to confirm that he would be receiving the note taker accommodation and the class recording accommodation. He stated that he noticed that professors were not recording this semester. He asked if that accommodation had been omitted. Ms. Neel responded that she had not heard anything about recordings. She did not inform him that there was any change to his class recording accommodation.

26. MR. THARRINGTON began accessing class recordings on his own through Zoom or Moodle, but not all of his professors were consistently using the recording feature, and his account did not grant him permission to view *any* of the recordings for one of his courses.

27. MR. THARRINGTON could not consistently access the recordings for class lectures throughout the Spring 2024 semester.

      A.   MR. THARRINGTON was able to access 81% of the class recordings for his Obligations course.

      B.   MR. THARRINGTON was able to access 17% of the class recordings for his Civil Law Property course.

      C.   MR. THARRINGTON was able to access 87% of the class recordings for his Constitutional Law course.

      D.   MR. THARRINGTON was able to access 42% of the class recordings for Bankruptcy.

      E.   MR. THARRINGTON was not able to access any of the class recordings for Administrative Criminal Justice.

28. On or about March 7 or 8, 2024, MR. THARRINGTON met with Jennie Stewart and Daniel Bureau from Disability Services to discuss some of the issues with his accommodations. At this meeting MR. THARRINGTON again raised the problem he was having with getting the

class recordings from Zoom and Moodle for the semester.

29. On March 12, 2024, MR. THARRINGTON received an email from Disability Services about his accommodations for the semester. The email stated that MR. THARRINGTON would still receive tape recorded lectures as an accommodation but it specified for the first time that he would be responsible for recording lectures with his own device.

30. MR. THARRINGTON met with Daniel Bureau and Jaelyn Hickman on March 20, 2024 to discuss issues he was having with the screen reader compatibility of his textbooks for the semester. At this meeting Ms. Hickman asked him about how his Dragon dictation software worked and specifically referred to it as a method for MR. THARRINGTON to record his class lectures. MR. THARRINGTON explained the Dragon software and told Ms. Hickman that it could not be used to record class lectures.

31. MR. THARRINGTON does not have a device that could reliably record the sound in a classroom or lecture hall.

32. As the recordings for the Fall 2023 semester were always provided as recordings from Zoom or Moodle, MR. THARRINGTON believed that during the second semester he would receive this accommodation the same way.

33. On April 11, 2024, MR. THARRINGTON emailed several LSU staff and administrators for clarification about the class recordings. He explained that in the previous semester he had received recordings directly from professors or their assistants. He explained that he had not been receiving the recordings this way during the Spring 2024 semester, and he asked for assistance with getting recordings for class lectures he was not able to access via Zoom or Moodle.

34. Daniel Bureau, Assistant Vice President for Student Health and Wellbeing responded that

MR. THARRINGTON's previous documented accommodations did not permit for lectures to be recorded for him. This was inaccurate, as MR. THARRINGTON had received all the recordings during the Fall 2023 semester as recordings through Zoom and Moodle. MR. THARRINGTON was not informed that he should have been self-recording his lectures for the Spring 2024 semester until March 12, 2024 and MR. THARRINGON did not have the technology to do this recording.

35. MR. THARRINGTON responded to Mr. Bureau and forwarded emails from the previous semester, showing how he had received class recordings in the past, and explaining that he was not informed that practice would change. Mr. Bureau responded that two other administrators, Mr. Jake Henry and Ms. Jaelyn Hickman had "worked to ensure that moving forward [he] would have access to faculty provided recordings." Mr. Bureau also stated that he would change the accommodation in the letter generated through the student database.

36. LSU failed to accommodate MR. THARRINGTON with tape recorded lectures as an accommodation, or failed to timely inform MR. THARRINGTON that the method for tape recording lectures had changed and it would be his responsibility to record the classes himself, and assist him to get the technology he would need to record. Without recordings for a significant portion of his class lectures, MR. THARRINGTON had great difficulty retaining and studying the course material, preparing for exams and quizzes, and performing on exams and quizzes.

## II.     <u>Failure to Provide Class Notes for Bankruptcy Course</u>

37. MR. THARRINGTON also had issues receiving class notes during the Spring 2024 semester.

38. On January 26, 2024, MR. THARRINGTON emailed the Disability Services Note Taking email account with attached notes that he had received for his Bankruptcy course. He

explained that the notes were not compatible with his screen reading software and they were incomplete for the three weeks of classes that had taken place that semester.

39. MR. THARRINGTON did not receive a response to his email. He followed up about this issue with Ms. Neel and Assistant Dean Jake Henry on March 5, 2024.

40. MR. THARRINGTON then received an email from a graduate assistant informing him that a second notetaker had been assigned and both notetakers had been instructed to provide typed notes which would be compatible with his screen reader.

41. MR. THARRINGTON followed up on March 6, 2024, with several staff members from Disability Services and administrators from the law school to ask about the Bankruptcy midterm scheduled for March 7, 2024. MR. THARRINGTON stated that he did not feel he could move forward with taking the exam without the accessible notes accommodation.

42. Dean Alena Allen and Associate Dean Andrea Carroll informed MR. THARRINGTON that he would need to sit for the midterm examination as scheduled and appeal his grade if necessary.

43. MR. THARRINGTON proposed two alternative reasonable accommodations to make up for his lack of accessible notes: 1) Provide the notes for the midterm and allow MR. THARRINGTON two weeks to review the accessible notes before taking the midterm, or 2) Reallocate the midterm's 5% grade to an assignment which makes up 20% of the final grade.

44. Dean Allen replied that the midterm grade could be made advisory at the outset and have the final exam count as an additional 5% of the final course grade, in place of the midterm.

45. MR. THARRINGTON proceeded with taking the exam without the accessible notes. He failed the exam.

46. MR. THARRINGTON ultimately received the accessible notes for the Bankruptcy course after the midterm exam. MR. THARRINGTON was forced to catch up on reviewing the accessible class notes from the first two months of the semester, while also trying to stay on top of his class notes and lectures for the second half of the semester.

47. The delayed notes and his failed midterm exam taken without the accommodations he was granted resulted in an increase in stress and worsened his PTSD symptoms.

48. On May 14, 2024, MR. THARRINGTON received a response from Jennie Stewart, ADA Coordinator, to his grievance complaint. Ms. Stewart admitted that there was evidence of failure to accommodate regarding the Bankruptcy class from January to March 2024. Ms. Stewart added that, though the notes were remediated at a later date, they were not available for MR. THARRINGTON's midterm, even though he had informed Disability Services of the problem.

49. Ms. Stewart agreed to exclude the midterm grade from MR. THARRINGTON's final grade in the course.

50. Though this exclusion of the midterm grade did partially address the failure to provide accessible class notes, it did not remediate the impact that the delayed notes had on MR. THARRINGTON's overall grade in the class as a result of missing out on the pedagogical exercise afforded by the midterm exam, and having to catch up on the first two months of class notes while also staying on top of the remaining class lectures and notes for the rest of the semester.

51. In the official grievance that MR. THARRINGTON filed with Disability Services on March 18, 2024, he outlined several ongoing issues he had with his accommodations, including the lack of accessible notes provided in advance of his midterm.

52. MR. THARRINGTON requested that Disability Services take several actions, including reviewing existing accommodations policies, an adjustment of grades to pass/fail in classes where he was not given the accommodations he needed, and a prompt resolution of his transfer credits from Southern University Law Center to allow him to plan his remaining academic timeline with full knowledge of what credits he would need to complete.

53. Jennie Stewart responded to MR. THARRINGTON's grievance on May 14, 2024, admitting a failure to accommodate MR. THARRINGTON in his Bankruptcy course and offering to remove the midterm grade from his final grade for the course. No other remediation was offered.

### III.    Failure to Accommodate in Civil Law Property Class

54. MR. THARRINGTON was not adequately accommodated during his Civil Law Property class.

55. MR. THARRINGTON emailed his Professor J. Randall Trahan on April 2, 2024, about preparing which case he would read aloud from in class. In this email MR. THARRINGTON explained that he usually relies on a screen reader and would need time to prepare to read something aloud without the screen reader.

56. MR. THARRINGTON informed Professor Trahan that he was still waiting on a fully compatible format of the textbook, which should arrive by April 4, 2024. Professor Trahan confirmed which hypotheticals, cases, and laws would be covered in class the following day.

57. On April 3, 2024, Professor Trahan called on MR. THARRINGTON to read aloud from a section of the text that was not within the texts that the Professor had mentioned in his email. MR. THARRINGTON had not prepared to read aloud that specific case without the screen reader.

58. MR. THARRINGTON was unable to locate where he would need to read from, and he was not able to read aloud without his screen reader. Professor Trahan realized after a few moments that MR. THARRINGTON would not be able to read aloud and moved on to a different student. Several other students in the class laughed at MR. THARRINGTON because of his confusion and inability to read aloud as the Professor had asked.

59. MR. THARRINGTON emailed several staff members at Disability Services the following day to report the incident and the impact it had on his mental health.

60. MR. THARRINGTON was also not accommodated during his Civil Law Property final exam on April 26, 2024.

61. The Civil Law Property exam included a supplemental packet of material to use for the exam, made up of Louisiana Civil Code articles which would be relevant to the exam questions. MR. THARRINGTON was handed this supplement in paper form as he was walking into the exam. He was not provided with a version that was compatible with his screen reader.

62. MR. THARRINGTON struggled enormously with reviewing and using the inaccessible supplement he was given. The stress caused by trying to review the paper packet without the assistance of his screen reader led MR. THARRINGTON to cry during the exam.

63. MR. THARRINGTON's grade in Civil Law Property was the lowest of all of his classes in the Spring 2024 semester.

64. On May 23, 2024, in a meeting with Ms. Jaelyn Hickman, an Assistant Director of Disability Services, she remarked to MR. THARRINGTON that Disability Services should have scanned the paper exam supplement to make it accessible and she apologized to him for that failure.

65. Due to not receiving adequate accommodations for the Spring 2024 semester, MR. THARRINGTON's grades suffered because he was unable to adequately prepare for

exams and assignments. Further, his repeated requests to DEFENDANTS' employees for the accommodations they should have provided caused severe and prolonged stress and emotional distress.

66.   DEFENDANTS' discrimination caused MR. THARRINGTON emotional distress and worsened his PTSD symptoms. MR. THARRINGTON's doctor increased his medication dosages and prescribed additional medications.

67.   Upon information and belief, MR. THARRINGTON's grades would not have been as low, and he would not have experienced anxiety, stress, and worsened PTSD symptoms, had he been provided his approved accommodations by DEFENDANTS.

68.   Due to the lack of sufficient accommodations, MR. THARRINGTON has suffered embarrassment, distress, anxiety, and invasion of his civil rights. MR. THARRINGTON also intends to prove at trial that the lack of sufficient accommodations caused his grades to suffer.

69.   LSU published "Policy Statement 26, Disability Service, Duties, and Compliance" which states "the policy and procedures of Louisiana State University to provide equal-access and opportunity to all persons, without regard to disability, in the recruitment of, admission to, participation in, or employment in, the programs, activities, and services operated and sponsored by the University pursuant to the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 (ADA), as amended, and other related federal and state laws."

70.   According to Policy Statement 26, "the university is committed to promoting an atmosphere to prevent discrimination against individuals with disabilities, to bring persons with disabilities into the social and economic mainstream, to provide enforceable standards to address discrimination against individuals with disabilities, and provide reasonable and appropriate accommodations or auxiliary aids or services."

71. Thus, in enrolling at LSU Law, MR. THARRINGTON developed an expectation interest that there would be an atmosphere preventing discrimination against individuals with disabilities, enforceable standards to address discrimination against individuals with disabilities, and that LSU Law would provide reasonable and appropriate accommodations or auxiliary aids or services.

72. By and through discrimination outlined in this Complaint, and as will be shown at trial, MR. THARRINGTON's expectations have not been satisfied.

73. Upon information and belief, DEFENDANTS breached their promise not to discriminate against MR. THARRINGTON in exchange for Federal funding under the RA.

74. Upon information and belief, DEFENDANTS were aware that, for breaching their contract with the Federal Government, they would be subjected to the usual contract remedies in private suits, which include MR. THARRINGTON's expectation interest.

75. MR. THARRINGTON is entitled to damages that will put him in as good a position as he would have been in had his expectation interests been satisfied by DEFENDANTS.  Upon information and belief, due to the lack of sufficient accommodations, MR. THARRINGTON was not afforded an equal opportunity to engage in the services, programs, and activities offered by DEFENDANTS.

76. Upon information and belief, MR. THARRINGTON was not afforded an equal opportunity to learn and participate in his courses in the same manner as individuals who do not require accommodation.

77. Upon information and belief, DEFENDANTS were aware of MR. THARRINGTON's disability.

78. Upon information and belief, because of DEFENDANTS' failure to ensure

MR. THARRINGTON's accommodations were provided, he received services that were objectively substandard and that were inferior to those provided to individuals who do not have a disability.

79.  THE BOARD intentionally discriminated against MR. THARRINGTON in that MR. THARRINGTON gave THE BOARD's employees notice of his disability, limitations, and needed accommodations; additionally, THE BOARD intentionally discriminated against MR. THARRINGTON with deliberate indifference to his rights and to MR. THARRINGTON's accommodation needs; THE BOARD's discrimination has caused MR. THARRINGTON invasion of his civil rights, exacerbation of his PTSD symptoms, breach/violation of MR. THARRINGTON's expectations, and actual damages.

## COUNT I – VIOLATION OF TITLE II OF THE AMERICANS WITH DISIBILITIES ACT SOLELY AS TO WILLIAM F. TATE IV IN HIS OFFICIAL CAPACITY

80.  MR. THARRINGTON realleges and reavers Paragraphs 1-79 as if they were expressly restated herein.

81.  MR. THARRINGTON is enrolled as a student at LSU Law. As is set forth above, MR. THARRINGTON was granted approved accommodations necessary to partake in DEFENDANTS' classes and curriculum in a manner that is equivalent to that of persons who do not have disabilities.

82.  As is outlined above, DEFENDANTS repeatedly discriminated against MR. THARRINGTON by failing and/or refusing to provide the accommodations necessary to ensure MR. THARRINGTON is able to participate in classes, study and review class material, and prepare for and take exams. As a result, MR. THARRINGTON has been unable to meaningfully engage in some of the educational services provided at LSU Law.

83.  Due to the discrimination he has experienced, MR. THARRINGTON has suffered loss of

educational opportunities, lowered grades, stress and emotional distress, and invasion of his civil rights.

84. MR. THARRINGTON seeks injunctive and declaratory relief and attorneys' fees and costs to redress MR. TATE's unlawful discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*

85. At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12131, *et seq.* has been in full force and effect and has applied to MR. TATE's conduct.

86. At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to MR. TATE's conduct.

87. At all times relevant to this action, MR. THARRINGTON has been substantially limited in the major life activities of reading skills, writing, and spelling, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

88. THE BOARD is a public entity within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1).

89. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

90. Federal regulations implementing Title II of the ADA provide that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

[or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

91. Federal regulations implementing Title II of the ADA further provide that "a public entity shall operate each service, program, or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

92. Federal regulations implementing Title II of the ADA further provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

93. THE BOARD, through the actions of its employees, discriminated against MR. THARRINGTON, on the basis of his disability, in violation of Title II of the ADA and its implementing regulations.

94. MR. TATE, as the chief executive of THE BOARD, has the power and authority to end the unlawful discrimination against MR. THARRINGTON and this Court can issue an Order for MR. TATE to end the unlawful discrimination.

95. MR. THARRINGTON is therefore entitled to injunctive relief, as well as an award of attorneys' fees and costs (including expert expenses), pursuant to Title II of the ADA.

**CLAIM II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

96. MR. THARRINGTON repeats and realleges all preceding paragraphs in support of this claim.

97. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to DEFENDANTS' conduct.

98. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to DEFENDANTS' conduct.

99. At all times relevant to this action, MR. THARRINGTON has had substantial limitations to his major life activities of reading, writing, and spelling, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

100. LSU published "Policy Statement 26, Disability Service, Duties, and Compliance" which states "the policy and procedures of Louisiana State University to provide equal-access and opportunity to all persons, without regard to disability, in the recruitment of, admission to, participation in, or employment in, the programs, activities, and services operated and sponsored by the University pursuant to the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 (ADA), as amended, and other related federal and state laws."

101. According to Policy Statement 26, "the university is committed to promoting an atmosphere to prevent discrimination against individuals with disabilities, to bring persons with disabilities into the social and economic mainstream, to provide enforceable standards to address discrimination against individuals with disabilities, and provide reasonable and appropriate accommodations or auxiliary aids or services."

102. Thus, in enrolling at LSU Law, MR. THARRINGTON developed an expectation interest that there would be an atmosphere preventing discrimination against individuals with disabilities, enforceable standards to address discrimination against individuals with disabilities, and that LSU Law would provide reasonable and appropriate accommodations or auxiliary aids or

services.

103. By and through discrimination outlined in this Complaint, and as will be shown at trial, MR. THARRINGTON's expectations have not been satisfied.

104. Upon information and belief, DEFENDANTS breached their promise not to discriminate against MR. THARRINGTON in exchange for Federal funding under the RA.

105. Upon information and belief, DEFENDANTS were aware that, for breaching their contract with the Federal Government, they would be subjected to the usual contract remedies in private suits, which include MR. THARRINGTON's expectation interest.

106. MR. THARRINGTON is entitled to damages that will put him in as good a position as he would have been in had expectation interests been satisfied by DEFENDANTS.

107. The Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.
> 29 U.S.C. § 794(a).

108. Upon information and belief, as set forth herein, DEFENDANTS discriminated against MR. THARRINGTON on the basis of disability, in violation of 29 U.S.C. § 794.

109. Upon information and belief, a non-exclusive list of DEFENDANTS' violations of the Rehabilitation Act and discriminatory conduct against MR. THARRINGTON are evidenced by:

> A. Denying MR. THARRINGTON access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations and services offered by DEFENDANTS;

B.    By otherwise limiting MR. THARRINGTON in the enjoyment of the rights, privileges, advantages, and opportunities enjoyed by individuals without disabilities who receive DEFENDANTS' aids, benefits, and services;

C.    Failing to provide reasonable accommodation to MR. THARRINGTON; and

D.    Excluding MR. THARRINGTON from participation in, and the benefits of, DEFENDANTS' services, programs, and activities as a result of DEFENDANTS failing to provide MR. THARRINGTON with reasonable accommodation.

110.    Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act which MR. THARRINGTON is more likely than not going to encounter upon continuing to take classes at LSU Law.

111.    MR. THARRINGTON brings this action:

A.    To redress injuries suffered as a result of DEFENDANTS' discriminatory actions and inactions set forth herein;

B.    To reasonably avoid further and future injury as a result of DEFENDANTS' ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Act;

C.    To ensure DEFENDANTS' services, programs, and activities are accessible as required by the relevant applications of Title II of the ADA;

D.    To be made whole and ensure future compliance; and

E.    To reasonably avoid future ADA and Rehabilitation Act litigation

involving the same DEFENDANTS and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

112. MR. THARRINGTON consistently and repeatedly informed DEFENDANTS he was not receiving the reasonable accommodations required by his Approved Accommodations which are necessary for MR. THARRINGTON to partake in DEFENDANTS' classes and curriculum in a manner that is equivalent to that of persons who do not have disabilities.

113. MR. THARRINGTON repeatedly contacted his professors, deans, and DEFENDANTS' administrators and staff regarding their failure to provide reasonable accommodations.

114. MR THARRINGTON tried to resolve these issues informally, and when he was unable to, he filed a grievance complaint with LSU Law in March 2024 to address his accessibility issues.

115. Nonetheless, DEFENDANTS failed to fully respond to MR. THARRINGTON's complaints or remedy the failures to accommodate outlined in this action.

116. DEFENDANTS had an opportunity to accommodate MR. THARRINGTON. Despite receipt of numerous emails, notices, and a grievance complaint from MR. THARRINGTON, DEFENDANTS failed to provide MR. THARRINGTON with his approved accommodations in response to his requests.

117. DEFENDANTS had knowledge of MR. THARRINGTON's disabilities, limitations, and requested accommodations.

118. Despite knowledge of MR. THARRINGTON's disabilities, limitations, and requested accommodations, DEFENDANTS failed to accommodate MR. THARRINGTON. DEFENDANTS' failure to accommodate MR. THARRINGTON when faced with his stated needs constitutes intentional discrimination.

119. As set forth above, MR. THARRINGTON has been denied access to, and without the relief

requested herein, will continue to be denied the access to the goods, services, programs, facilities, activities, and accommodations offered by DEFENDANTS solely by reason of his disability, and has otherwise been discriminated against and damaged solely by reason of his disability as a result of DEFENDANTS' Rehabilitation Act violations set forth above.

120. MR. THARRINGTON has retained undersigned counsel for the filing and prosecution of this action, and undersigned counsel is incurring reasonable attorneys' fees, including costs and litigation expenses, in this action. MR. THARRINGTON is entitled to recover those attorneys' fees, costs and litigation expenses from DEFENDANTS pursuant to 29 U.S.C. §794a(b).

121. Pursuant to 29 U.S.C. §794a this Court is provided authority to grant MR. THARRINGTON injunctive relief, including an order to alter the subject premises, facilities, services, activities, programs, and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; and grant MR. THARRINGTON compensatory damages for DEFENDANTS' discriminatory actions.

## PRAYER FOR RELIEF

**WHEREFORE,** MR. THARRINGTON respectfully pray that:

    A.    This Court issue a Declaratory Judgment that determines that DEFENDANTS' policies, procedures, and practices have subjected MR. THARRINGTON to unlawful discrimination in violation of the ADA and RA.

    B.    This Court grant permanent injunctive relief to MR. THARRINGTON against MR. TATE, ordering him to take action to cause the BOARD to cease violating the statutory and regulatory requirements of the ADA and RA.

C.    This Court grant permanent injunctive relief to MR. THARRINGTON against the BOARD ordering it to cease violating the statutory and regulatory requirements of the RA.

D.    This Court issue an injunction to MR. THARRINGTON ordering MR. TATE and the BOARD:

    i.  to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against MR. THARRINGTON or individuals with a disability by failing to provide reasonable accommodation;

    ii.  to develop, implement, promulgate, and comply with a policy requiring that notetakers or class notes be provided in an accessible format within twenty-four (24) hours of a class lecture to all individuals with disabilities who require these accommodations; and

    iii.  to develop, implement, promulgate, and comply with a policy requiring that class lecture recordings be provided within twenty-four (24) hours of a class lecture to all individuals with disabilities who require these accommodations;

    iv.  to develop, implement, promulgate, and comply with a policy requiring that all exam materials be provided in an accessible format to all individuals with disabilities who require these accommodations;

    v.  to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are disabled under the ADA and the RA.

E.    Award to MR. THARRINGTON:

    i.    Compensatory, nominal, and actual damages pursuant to the RA;

    ii.   Reasonable attorneys' fees, costs (including expert fees), and other expenses of the suit, pursuant to the ADA and RA.

    iii.  Interest on all amounts, at the highest rates and from the earliest dates allowed by law; and

    iv.   Any and all other equitable or legal relief that this Court finds necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

PLAINTIFF demands a trial by jury on all issues.


Dated: August 21, 2024

Respectfully Submitted,

/s Garret S. DeReus
**BIZER & DEREUS**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Eva M. Kalikoff (LA # 39932)
eva@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
